IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:06-CV-363-BR

| | | |
|---|---|---|
| D.S. SIMMONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| THE STEEL GROUP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Defendant has filed a response and plaintiff has replied. Accordingly, this matter is ripe for disposition.

**I. BACKGROUND**

On 11 December 2003 plaintiff and defendant entered into a purchase order agreement for construction work to be performed at Fayetteville State University. (Compl. ¶ 3; Ans. ¶ 3). Defendant agreed to provide structural and steel products for the project and in exchange plaintiff agreed to pay defendant $393,900.00. (Id.). Subsequently, the parties agreed to a modification of the purchase order in which defendant would provide additional materials for additional compensation, bringing the total amount of compensation to $398,228.25. (Compl. ¶¶ 4, 6; Ans. ¶¶ 4, 6). Defendant began work on the project and was paid $149,800.00 by plaintiff. (Compl. ¶ 7; Ans. ¶ 7).

During the course of the project, the price of steel increased substantially and defendant requested price adjustments from plaintiff. (Compl. ¶ 7; Ans. ¶ 7)[1]. In late 2004 defendant ceased work on the project. (Compl. ¶ 8; Ans. ¶ 8). As a result, plaintiff had to purchase materials which were supposed to be supplied by defendant from other sources, at a cost of $223,868.50. (Compl. ¶ 9). Defendant also failed to pay one of its vendors, Basic Metal Products, Inc., and plaintiff had to cover that cost in the amount of $168,043.37. (Compl. ¶ 10; Ans. ¶ 10).

Plaintiff has asserted six causes of action against defendant as a result of defendant's alleged breach of contract. (Id. ¶¶ 12-46). In its motion, plaintiff contends that it is entitled to summary judgment as to liability on its breach of contract and Uniform Commercial Code ("UCC") claims.

## II. DISCUSSION

### A. Standard of Review

A motion for summary judgment is appropriate where the moving party can "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue as to a material fact is "genuine," when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making its determination, the court may look at the pleadings, discovery material, and any affidavits submitted by the parties. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The court must construe all facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 254.

### B. Breach of Contract and UCC Claims

---

[1] The complaint contains two paragraphs on page 2 that are numbered "7." This citation refers to the second paragraph 7.

2

Plaintiff first alleges that it is entitled to summary judgment on its breach of contract claim. In order to establish a breach of contract, plaintiff must show that there was a valid contract between the parties and that defendant breached the terms of that contract. Jackson v. Carolina Hardwood Co., Inc., 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995). To be actionable, the breach must materially affect the contract, such that it "substantially defeats the purpose of the agreement or . . . can be characterized as a substantial failure to perform." Long v. Long, 160 N.C. App. 664, 668, 588 S.E.2d 1, 4 (2003). The determination of what may be considered material is a question of law for the court. Id.

Plaintiff next alleges that it is entitled to summary judgment on its UCC claim under sections 2-711 and 2-712 for damages resulting from cover after defendant's breach. See N.C. Gen. Stat. §§ 25-2-711, 25-2-712. Section 2-711 allows a buyer to find substitute goods, or "cover," and collect damages under section 2-712, following a seller's failure to make delivery. N.C. Gen. Stat. § 25-2-711(1)(a). The next section states that "the buyer may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller." N.C. Gen. Stat. § 25-2-712(1). Additionally, the buyer is permitted to "recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages." N.C. Gen. Stat. § 25-2-712(2).

Here, defendant admits that there was a valid contract between the parties. (Ans. ¶ 3). Additionally, defendant admits that it ceased working on the construction project prior to its completion. (Id. ¶ 8). Defendant, however, contends "that its performance should be excused under the doctrines of frustration of purpose and impracticability." (Resp. at 3).

3

The defense of impracticability is found both in the UCC as well as in the analogous common law defense of frustration of purpose. Under section 2-615 of the UCC, a seller may be excused from performance "if performance as agreed has been made impracticable by the occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made," provided that the buyer has been seasonably notified of the nonperformance. N.C. Gen. Stat. §25-2-615 (a), (c). Accordingly, defendant must show the following elements:

(1) performance has become "impracticable";

(2) the impracticability was due to the occurrence of some contingency which the parties expressly or impliedly agreed would discharge the promisor's duty to perform;

(3) the promisor did not assume the risk that the contingency would occur; [and]

(4) the promisor seasonably notified the promisee of the delay in delivery or that delivery would not occur at all.

Alamance County Bd. of Educ. v. Bobby Murray Chevrolet, Inc., 465 S.E.2d 306, 310 (N.C. Ct. App. 1996). Increased cost alone will not satisfy the requirements of this defense, nor will a rise in the market suffice. N.C. Gen. Stat. § 25-2-615, cmt. 4. However, "a severe shortage of raw materials or of supplies due to a contingency such as war, embargo, local crop failure, unforeseen shutdown of major sources of supply, or the like" would be sufficient. Id. Additionally, Official Comment 5 to this UCC section warns that a seller cannot avail himself of this defense unless he has "employed all due measures to assure himself that his source will not fail." N.C. Gen. Stat. § 25-2-615, cmt 5.

Frustration of purpose, which is the common law relative to the UCC defense of impracticability, excuses performance where a "fortuitous event supervenes to cause a failure of the consideration or a practically total destruction of the expected value of the performance." Brenner

4

v. Little Red School House, Ltd., 274 S.E.2d 206, 209 (N.C. 1981) (quoting 17 Am. Jr. 2d Contracts § 401 (1964)). This defense is inapplicable in situations where the frustrating event was reasonably foreseeable. Id. The purpose of the doctrine is to grant relief where "the parties could not reasonably have protected themselves by the terms of the contract against contingencies which later arose." Id. In sum, to use this defense the contract must contain an implied condition that "a changed condition would excuse performance; this changed condition causes a failure of consideration or the expected value of performance; and that the changed condition was not reasonably foreseeable." Faulconer v. Wysong & Miles Co., 574 S.E.2d 688, 691 (N.C. Ct. App. 2002).

Here, defendant alleges that market conditions caused an unprecedented and unforeseeable rise in steel prices during 2004, frustrating its performance. However, defendant has not produced any facts which would indicate that the parties expressly or impliedly agreed that a significant rise in the price of steel would discharge defendant's performance. Additionally, defendant has not come forward with any reason behind the price increase, such as a shutdown of major supply sources or war. Instead it appears that mere fluctuation in the market was the reason behind the increase. See generally Chainworks, Inc. v. Webco Indus., 2006 U.S. Dist. LEXIS 9194, at *28 (W.D. Mich. 2006) (increase in steel prices in 2004 insufficient to support defense of impracticability because defendant failed to demonstrate that price increase was "result of an unforeseen contingency").

Defendant could reasonably have protected itself from such a price increase by inserting certain provisions in the contract, such as setting a ceiling on price. Defendant's failure to demonstrate that the rise in steel prices was due to an unforeseen contingency as well as its failure to ensure that the contract provided price protection prevents defendant from proving the defense

5

of impracticability under UCC § 2-615 or the analogous common law defense of frustration of purpose. Accordingly, plaintiff's motion for summary judgment as to defendant's liability on the breach of contract and UCC claims is GRANTED.

This 19 February 2008.

W. Earl Britt
Senior U.S. District Judge

DSS/TSG/MKM